May it please the Court, my name is Jay Johnson, and I am here today representing Appellant, American Farm Bureau Federation. With the Court's indulgence, I plan to spend the first five minutes or so discussing Appellant's standing and the District Court's Federal Land Policy and Management Act decision. I will then give the podium over to my colleague, Mr. Walston, who represents Appellant Public Lands Council. We'd like to reserve two minutes for rebuttal. Most of the regulations here at issue directly govern the issuance of permits for private grazing on Federal lands that are managed by the Bureau of Land Management. These private grazing activities are conducted by ranchers who in many cases are members of the Farm Bureau of PLC or both. These regulations, though, aren't directed at the American Farm Bureau, though, are they? They're directed, Your Honor. American Farm Bureau was not the object of these regulations. Is that right? I would say that the members of American Farm Bureau and the members. That's different. It is different, Your Honor, but through the principles. It's different. Yes, Your Honor, it's different. But American Farm Bureau has organizational standing through its members. Which member of American Farm Bureau meets the basic injury in fact requirement for standing for an organizational plaintiff? I would say any member of American Farm Bureau that has to graze on public lands that are managed by the Federal Bureau of Land Management meets the standing requirements. In the record here. In the record. Where in the record here is that reflected? Well, our basic argument, Your Honor, our first line argument is that an entity representing parties who are directly the objects of Federal regulation don't really have to put their evidence of standing into the record because that. Apart from that argument, where in the record does it show any individual that's a member of that's part of American Farm Bureau that has suffered an injury in fact here? Well, apart from that argument, we did submit a declaration to this Court that is a member of American Farm Bureau and of PLC who. Doesn't tell us very much, does it? Well, it discusses the fact that this particular member has a federal land ranch that he grazes. He grazes. He grazes, I think, cattle and sheep. And those lands are regulated by BLM. He has a permit from BLM. His permit has been subjected to public comments and objections from Plaintiff's Western Watersheds Project. And the idea is that if these 2006 grazing regulations had been in place, Western Watersheds, which I think the declaration says had never submitted comments on his particular allotment before, would not have had the opportunity to cause the disruption that it is now causing, not to say that their objections are necessarily wrongful, just to say that our plaintiff has been injured by this activity. This is Hampton? This is Hampton, yes, sir. And the Public Lands Council has also submitted several declarations. I don't want to waste all your time on this standing because it's good if you get to the merits as well. Sure. Well, with the merits of the Federal Land Policy and Management Act, I think it's very important to Farm Bureau to point out that the district court's ruling declaring all of these 2006 grazing regulations illegal under 43 U.S.C. 1739E is logically prior to the NEPA rulings. If the district court were right about violating Section 1739E, no amount of NEPA environmental review could possibly save the regulations. But the district court didn't apply Chevron at all, didn't even discuss Chevron. Can I ask you a question about that? Yes, Your Honor. I found it kind of interesting when the government drops out of this, how this case could stay in existence. And, you know, my first instinct was it shouldn't, but then I looked at all the cases and it says that it can if you have standing. But one of the cases that discusses that says that when the government drops out, and this is ---- Dendrickson? Yes, right. You know where I'm going. I might, but go ahead. And so maybe you can help me on this. It says that when the government drops out, you don't apply the Chevron analysis. Well, I think what the case actually says, and I read this again yesterday, is not just that the government drops out, but it acquiesces in the district court's judgment. And in this case, while the government has argued in an amicus brief that appellants do not have standing, that same amicus brief never concedes that the district court was right. And in fact ---- Aren't they applying the 2005 regulations now? The pre-2006 regulations? I saw that somewhere in the paper. The 1995 regulations. The 1995, sorry. They issued a memo saying to the district areas to apply the 1995 regs. Right. I think the point being the government in its amicus brief basically says, you know, we have discretion to issue these regulations. And so it's not at all conceding that the district court was right. It's just simply saying we're not appealing and public lands council and farm bureau don't have standing to appeal. That's not acquiescence? I would say that's not acquiescence. I think what happened in Didrikson, sorry to interrupt, is that the government said, you know what, the district court was right, and that's why we're not, you know, appealing here because the district court was right. That's not what it says. It says, and I quote, If any deference is involved, it would be to the agency's dismissal of the appeal on behalf of the Secretary of the Interior and the acting director of the regional director of the FWS. The dismissal appears to be a determination that the regulation does not properly interpret the MMPA. In the present posture of the case, the FSO, in order to prevail, must establish that the amendment to the regulation is the only reasonable interpretation of the MMPA. There's nothing else about acquiescence other than dropping their appeal. I think it said, if I heard you right, a determination that the regulations did not properly abide by the statute. It says appears. Appears. Well, I haven't gone back to read the briefs, but I think the reason it appeared that way is the government said. It says the dismissal appears to be a determination that the regulations did not properly interpret the MMPA. Right. Well. Isn't that exactly what we have here? I don't think so, and I think the government is pretty clear in its amicus brief that it does not concede the correctness of the district court's interpretation. But I should certainly let Mr. Walston continue to argue. All right. Just to briefly address the question that Judge Pays raised, we believe that the ranchers, public land ranchers, and specifically Pacific Lands Council and American Farm Bureau Federation are the objects of regulation here. The regulations establish standards that the BLM has to apply in regulating the public range, and these standards apply directly to the public land ranchers. For example, the regulations authorize public land. Counsel, you may want to identify who you are. Oh, I'm sorry. I'm Mr. Walston, and I represent Public Lands Council. Thank you. But the regulations authorize public land ranchers to acquire title to range land improvements, to acquire water rights. They establish time limitations for taking actions against public land ranchers. So in all of these respects, we believe that public land ranchers are the object of the regulations. And indeed, in the Supreme Court's 2000 decision in Public Lands Council, my client v. Babbitt, the Supreme Court did authorize Public Land Council to challenge regulations adopted by the BLM without going into any question about whether it had standing to do so, which it could only have done if public land ranchers were indeed the object of the regulations. Now, going to the issues of rightness and the plaintiff's own standing, this case arises in a fairly unusual factual situation. The regulations have not been applied, but perhaps more importantly, the regulations do not authorize public land ranchers to take any action on the public range. They do not authorize any activity on the public range. They establish standards, as I said earlier, that the BLM has to apply in regulating the public range, but none of these standards actually authorize a public land rancher to take any specific action of any kind on the public range. They don't authorize grazing. They don't authorize any other type of activity by public land ranchers. And because of that, we think that the plaintiffs lack standing to bring this case, and also that the case is not right for adjudication under the Supreme Court decisions first in Summers, which was decided recently, and also the earlier decision, the National Wildlife Federation case that was decided by the Supreme Court in 2000. Turning first to rightness, the Supreme Court in Summers specifically stated that the plaintiffs in that case did not have standing to challenge the regulations that had been adopted by the Forest Service because the Forest Service had not actually applied the regulations to any specific activity. And the Court specifically said that the plaintiffs in that case had failed to show how the Forest Service regulations, how the application of the regulations caused an impedance to any specific plan. And, you know, in Summers, the plaintiffs have challenged a particular removal from a timber from a burned area in a specific area. And they settled that claim with the Forest Service. Right. And they went on to challenge the other parts of the regulation to other parcels throughout the country. Right. And that's what the Supreme Court said, where they lack standing. They didn't have standing. They couldn't show any injury. Right. That's precisely our argument. Well, that's not the case here. That's precisely our argument. The point is that in Summers, the Supreme Court held that the plaintiffs did have standing to challenge the regulations that had been actually applied to a specific project, which was called the Burnt Ridge Project. Those regulations were applied to the project. The Supreme Court said you have standing to challenge those regulations. But, unfortunately, that case had been settled, so that issue was out of the Supreme Court's venue at that point. Then the Supreme Court turned to the regulations that had not been applied. And the Supreme Court said in that case, those regulations haven't been applied and, therefore, the plaintiffs don't lack or do not have standing to challenge those regulations because those regulations have not been applied and the plaintiffs were not able to show that there was any concrete application that was affecting any concrete injury to them. And, as I say, that was this case is even stronger than that case. Well, if you're right, then any time that there's a failure to have a proper environmental impact statement, you couldn't challenge the action of the regulatory agency until they actually were going to do that which they proposed to do without having a good environmental impact statement. So, in other words, they would start to perhaps injure the environment first. That's not our position, Your Honor. But isn't that part of it? They have these NEPA claims here that they said they didn't take the requisite hard look at the impact of these regulations on the animals that are on the range. Right. We would agree that a NEPA claim can be right for review if the regulation that is being challenged or the Federal action that is being challenged does authorize some kind of activity that's going to potentially injure the environment. But here, as I said earlier, these regulations do not authorize any public land rancher to take any activity or to perform any grazing activity on the public range. And that's why this case, first of all, is not right for adjudication by this Court, and secondly, because why the plaintiffs do not have standing to challenge the regulations, namely that they cannot demonstrate a concrete injury and they can't demonstrate a concrete injury because the regulations don't authorize any action at all. The regulations do not authorize any action. So let's assume your time is running out, but let's just assume for a moment that the plaintiffs get over standing and ripeness and we're to the merits. So where did the district court go wrong on NEPA or ES, or the Environmental Endangered Species Act? Well, okay. First on the NEPA issue, we think the district court below applied the wrong standard. The district court treated this as a de novo matter. It said it didn't even examine the EIS or the language of the EIS. But this Court recently, in the Lands Council case in Bank, said that an action does not violate NEPA unless the agency demonstrates, unless the proponent is able to show some concrete injury that is caused by the violation. And the Court in the Lands Council case adopted a very narrow standard of review. It said that the, specifically that the experts in every field routinely disagree on issues, that it's up to the court not to insert itself into the position of adjudicating differences between scientific agreements or disagreements. And that ultimately when specialists express conflicting views concerning a particular activity, it's not the court's role to resolve those, but rather to defer to the agency in the way it has chosen to resolve them. So the Court in Lands Council adopted a very narrow standard of review and held in that case that the EIS did not violate NEPA, applying that standard of review. And the Ninth Circuit in two recent decisions has followed the Lands Council decision and has also applied the narrow standard of review and actually upheld agency regulations. One case was River Runners v. Smarten, which was decided, I think, in July of this year, and then also the Ecology Center v. Espinoza or Castaneda case that was decided in July of this year. In both of those cases, the Court said that the standard of review under NEPA is very narrow, and the Court must defer to the way the agency has resolved scientific disagreements within the agency, and that it is not the court's role to step into the process and decide which of these competing views is correct. On the ESA issue that the district court here attempted to decide which of the competing views? I'm sorry? Did the district court make such a determination here? Well, the district court basically said this scientific evidence is better than this scientific evidence, and this is where they went to? That's exactly what the district court did. The district court took the EIS that had been adopted by the BLM, and then it took the internal review document that had been prepared by some other experts within the Bureau, within the Secretary of the Interior's office, and put the two side by side and said basically that it agreed with the views of the dissenting viewpoint. I thought what the district court said was simply that the agency didn't take a hard look at these competing views. That's all that it said. It didn't make a determination that one was better than the other or more convincing the other. It just simply said you didn't take a hard look at all this stuff. I think that's fair, and I think that's exactly what the district court said. But the district court said that the BLM did not take a hard look at these at these environmental effects, but the court nowhere, nowhere in its decision made any reference to any passage whatsoever in the EIS. The court made no reference to any passage in the EIS. Now, how could the court say that the BLM failed to take a hard look at this, at these environmental effects? There really wasn't much of a discussion in the passages that you cited in terms of depth or detail. But isn't your remedy, if we were to agree with the district court, that the agency just does another environmental impact statement? I mean, I think maybe if we were to accept your argument and you were to lose the case, the answer would be no, but I don't think that's what you think. I mean, they go back and they take a hard look. All the district judge is saying is, look, they had these reports from the Fish and Wildlife Service and their in-house reports, et cetera, and they didn't do a substantial analysis of why they didn't agree with that. I mean, I've seen so many of these environmental impact statements, and if all you're saying is, look, we know that they say this, but we don't think that's the case because blah, blah, blah. They have to give reasons. It has to be reasons so the public can decide. That's the whole idea of an environmental impact statement. And I think that's all Judge Windmill was saying is they didn't do that. They just gave conclusory reasons as to why they weren't adopting that. The reasons — Sure. You're over time. Right. Okay. Sorry. The reasons were extensively discussed in the EIS. There were pages and pages and pages, which we've cited in our reply brief and also our opening brief, in which the BLM went into all these matters and had an extensive discussion of environmental effects. The district court never referred to them at all. Now, in response to your question, yes, the BLM could always go back and do another EIS, but the problem is that the district court used its decision that this EIS is invalid as a basis for invalidating the entire regulations, which has the effect of causing harm and injury to the public and ranchers who got certain rights and benefits in those regulations. Okay. We'll let you go on. Thank you. And there. May it please the Court. Laird Lucas, Boise, Idaho, for Plaintiff Appellee Western Watersheds Project. Judges. Can I pick up with exactly where you left off? The end of the district court's opinion, he enjoined all the regulations. Shouldn't he only have been enjoining the regulations that he found to be in violation? And I think it goes to the way you framed it. What Judge Windmill found was the environmental impact statement was flawed. That was an EIS for the entire rulemaking. He also found, of course, the Endangered Species Act was not complied with, which requires consultation. It's a package. They have to look at it as a package. They have to look at the individual parts, too, but it was the process that was flawed. That's what Judge Windmill primarily found. And as you correctly noted, Judge, he sent it back for them to do a new EIS and to or perhaps a supplemental EIS. Consultation. And do the consultation. And to do ESA consultation. And that's one of the reasons why I think our opponents have trouble proving standing here, because in the unusual, relatively unusual circumstances of this case, the government has accepted that ruling. They have said in the notice that we submitted to you, the instruction memorandum, if they're going to do anything further with these regulations, they'll do a new rulemaking. And that's effectively what Judge Windmill ordered was at least do a new EIS and consultation. BLM saying, we're not going to stand by these regs anymore. We're going to keep the old ones in place. That determination was made in November of 2008 at the end of the last administration. It wasn't a change in administrations that caused them to say we're going to accept the district court's ruling. I think we proved in the district court that the BLM went badly astray in this case. And it went badly astray because it did not listen to its own experts that it assigned to assess these regulations. Those experts said they will have adverse impacts in a lot of ways. But then those were not disclosed. And Mr. Walston can say that there was extensive discussion in the EIS, but in fact there wasn't. All of the impacts that were in the ARC-DIS, the internal draft that was suppressed, that entire discussion was removed in the final. There's only a few pages about the new regulations' impacts on sensitive species and water and wildlife. Yes, Judge? Well, I just want to pick up on one of the questions that Judge Moskovitz asked early on at the beginning, which is, or maybe it was Judge Fischer. Putting aside standing for just a moment and rightness and all that, even on the side of the appellants, what kind of deference do we owe the government's decision not to appeal or acquiescence? Is that entitled to any deference on our part? Or do we just go straight to the merits, I think, without giving any deference or consideration to acquiescence? That is a hard question. In my mind, I'm not sure you have to defer or not defer, because it does go to the question of redressability. Their Article III burden not only requires them to show injury and causation that the district court decision injured them, but that it's redressable. And where the government has said here they're not going to stand by this rulemaking, a reversal by this Court I don't think gets them anywhere. Yes, but here's the problem I have with that. When we're looking at the statutory interpretation, the FLIPMA, the district court did not do an overt Chevron analysis, and yet his opinion seems to, if Chevron is applicable here, as your opponents have pointed out, the district court has said that as a matter of statutory interpretation, the BLM's rulings, regulations with respect to public participation are not authorized by the statute. Now, what happens under that circumstance? The BLM, had it been on appeal, presumably would have been arguing that they were reasonable, but that's not the way the district court opinion is framed. So I'm a little concerned about what the implication is of the BLM not being here. They are the aggrieved party, and I'm not sure what we do with that. Well, what I would say, Your Honors, first of all, I disagree with Mr. Johnson that the FLIPMA issue logically comes first. It doesn't. What logically comes first. Whether it comes first or last. It's a part of the district court's ruling. And what the district court's express ruling was at the end of the order, yes, it talks about FLIPMA and violations of FLIPMA with respect to the public participation portion of the regulations. But its order is the regulations are enjoined for an EIS and a consultation. So your position would be if we were to get over all the standing issues and get to the merits, presumably we could affirm without even touching FLIPMA. That's exactly my position. And you could even drop a footnote saying you're not expressing an opinion on FLIPMA or not. FLIPMA gives us extra oomph in this case because cutting the public out of grazing permit decisions, these are decade-long decisions. They're not day-to-day decisions. They affect long-term management. Cutting the public out of that, we think, violates FLIPMA. But the logical antecedent is, did they go through NEPA? Did they go through ESA the way they were required to? And they did not. So that would be my position. Now, Mr. Feller, Professor Feller, who I'm going to be sharing my time with, may have slightly different views on the FLIPMA issue. But I'll let him address that. I think you can address the ESA and NEPA, affirm on those grounds, and move forward. I don't like ripeness and standing. Usually, as environmentalists, we're having to overcome those hurdles. I like getting to the merits. What we did in this case, and to go back in history just a little bit, it was like a detective story. And I don't know if any of the panel members were aware of this in the media, but these scientists who had written this analysis saying the regulation changes were going to have adverse consequences, their views were suppressed. Their dissent was wiped away. It was never disclosed to the public. It came out in national media. We had to get declarations filed from them in the court. And so for BLM to say, oh, it was just a choice between conflicting experts is not right at all. The experts they assigned to this said adverse impacts, and then they sanitized that by quickly writing a draft EIS. And they never allowed the public to comment on this critical analysis of their own experts. And, of course, U.S. Fish and Wildlife Service and many state agencies had similar things. Now, under NEPA, NEPA is supposed to foster informed decision-making and inform public participation. It has to assure the scientific integrity of the environmental impact statement. It has to take into account reasonable opposing views. These are all a long line of Ninth Circuit cases holding that. On the ripeness issue, I would like to point out in standing that in August, the Ninth Circuit issued a decision in California versus U.S. Department of Agriculture. This was after our brief was filed. It's 575F3999. This upheld the district court's ruling that a state roadless petitions rule violated NEPA and the Endangered Species Act. It was a facial challenge to a regulation held that the NEPA violation was ripe because, following Ohio Forestry from the Supreme Court, a NEPA challenge is ripe when the defective EIS is done. And the Endangered Species Act, as well, was held to be a ripe challenge. This was a facial challenge to regulations after the Summers case where the plaintiff showed that it was both ripe and they had standing. And we've done the same thing here. We filed over 100 pages of standing declarations in the district court from my clients who really use and enjoy the public lands. And under the grazing regulations, they have expectations and entitlement to be able to interact with BLM about those lands. They showed specific allotments in Idaho, in Nevada, that they regularly go to where there's a variety of species, including threatened and endangered species. They showed how the change in the regulations cutting them out would hard them, harm them, how the failure to disclose adverse impacts under NEPA harmed them, how the failure to consult under the ESA harmed them. We've fully proven standing under Summers and any other test. Roberts. Do you think that your opponents here have established standing here for purposes of the plaintiff? And this is where I filed a survey. Mr. Rex's declaration? I don't think their standing declarations do it because they're very short, very cursory. They're based on belief. They don't explain how the district court opinion harmed them. The only one that gave me some, you know, I'll speak for myself when I read them, was Mr. Rex's declaration. Agreed, Your Honor. And it seemed to be in your surreply brief that also seemed to have given you some positive. I think he showed injury. I think there was injury there. And then the question becomes redressability. He's saying he didn't get title to a range improvement project that he would have expected to get had the new regulations been in place. But if this Court reverses and throws out Judge Windmill's rulings and reinstates the 2006 regulations, I don't see how that gets him title when he wasn't given title already. He has to bring another lawsuit to do that. How about Dallas Horton? He's going to have a 30 percent reduction and it would be phased in in not less than 30 percent. So he's going to have a direct loss. He's going to have less either land to graze on or less grazing on the land that he has sooner. If it's true, they do it that way. I agree. We're not saying that the organizations here don't have interest in the grazing regulations. Of course they do. So do we. And they have standing to challenge them before. I just don't think their declarations here have shown in the unusual circumstances of this case where BLM dropped out and is not defending it. My time is up. If I could yield to Professor Feller. Thank you. May it please the Court. My name is Joseph Feller and I'm with the National Wildlife Federation in Boulder, Colorado. And I represent the Maughan group of plaintiffs whose case was consolidated with Western Watersheds' case. I would like to go very directly to the issue of Chevron deference and whether the BLM's decision to eliminate consultation with the interested public in several key provisions of its decision-making process is entitled to Chevron deference. And I think regardless of standing, regardless of whether the United States appealed or not, clearly there can be no Chevron deference in this case, simply because the Bureau of Land Management made no interpretation of the applicable statute. The applicable statute with regards to public participation is 43 U.S.C. section 1739E. Is that FLPMA? What's that? Is that FLPMA? Yes. That's part of the Federal Land Policy and Management Act. That section includes both a command and a delegation. The command says that the Secretary, acting through the BLM, shall provide for public participation not only in the development of plans and programs, but also in the execution of those plans and programs, and also in the management of the public lands. Now, in addition to that command, there is also a delegation to the BLM to implement and interpret that command through regulations. And the problem is that in its entire rulemaking process, the scoping notice, the notice of proposed rulemaking, and the final rule, the BLM never even acknowledged the existence of this statutory provision. You go through those Federal Register notices, you will find no mention of it. So how it is that the appellants can claim that the BLM's interpretation of the statute is entitled to deference when the BLM did not even acknowledge the existence of the statute? Well, what was it doing then? Well. If it wasn't interpreting the statute by promulgating regulation. Well, they promulgated regulations. And I guess by promulgating the regulations, they acknowledged that they had some authority over public participation, but they did not acknowledge that Congress gave them direction as to what they were supposed to do with that authority. Why would they have to do that? Well, we have a question. What other authority did they have? Well. You say you guess they had authority. Well. Implicitly by issuing regulations, they are acknowledging their authority. And that's why I say there's both a delegation and a command. Okay. I think it's fair to say by issuing regulations, they were acknowledging But the statute doesn't tell the agencies or the, you know, it doesn't say this is how much notice you have to give or how much participation you have to allow. There's some discretion with the agency to define the parameters of that participation and notice. You may want to let him finish his question before you interrupt. That's okay. Go ahead. I mean, right? I mean, there is some ambiguity there. Oh, there is ambiguity, but one has to take the words of the statute. What does public participation mean? What does management mean? Does it include grazing permits and leases that actually specify the terms of grazing? So what is the agency's view of what management means, of what participation means? And we really don't know. The agency acted as if there were no statutory command, as if it could do whatever it wanted. It acknowledged no need to fulfill the requirement that Congress put on it. That's why the Farm Bureau is right that it probably doesn't matter that the agency did not cite the statute for its delegation. There's no doubt that the agency was delegated authority, and we don't dispute that. But it was delegated authority to interpret a specific statutory command. And that's why, for example, when the Farm Bureau says the statute tells the agency to promulgate regulations governing public participation, that's not quite right. The statute tells it specifically that the regulations must do the following, must meet the following criteria. And it is law from hundreds of Supreme Court cases, State Farm in particular, that the agency must show in its decision that it considered the relevant factors. And an extremely relevant factor is that Congress put on requirements for public participation. Congress did not say however much public participation the BLM feels like allowing. They put on a certain minimum, a certain floor. And if the agency recognized that floor and interpreted and applied that floor, that would be one thing. But they didn't. They acted as if they were given a complete blank check and acknowledged no statutory limitations on their authority. I see my time is up. All right. Thank you. Thank you very much. You have one. Well, you're well over time, but I'll give you one minute to wrap up. Just to briefly address some points made by the plaintiffs. First, the plaintiffs have argued that the BLM is not enforcing the regulations at the present time, the current regulations. And instead, the BLM is enforcing the prior regulations. Well, the reason for that is that the district court enjoined the regulations and the BLM did not appeal. And therefore, the BLM has no choice other than to apply the old regulations rather than the new ones. And this Court's decisions in the past have spelled that obligation out quite clearly. So if this Court reverses the district court decision, then the BLM will be required to enforce the current regulations. Second, on the ñ Well, not required. It could change its mind. Well, yes. The BLM can always adopt new regulations. But the BLM does not have the authority not to apply the regulations without going through the notice and appeal process. There would be any command of the court that it would have to enforce them. Right. That's right. Do you know if they start the environmental impact statement review process again? No. As I understand, they have not. I don't know that they'd be required to do that because, basically, the new regulations have been enjoined. The old regulations were adopted validly back in 1995. What I'm saying is if they wanted to comply with the district court decision, they would go back and redo the environmental impact statement. Well, they haven't been doing that. As far as I know, they have not been doing any new environmental studies in relation to the old regulations. On the Endangered Species Act issue, the plaintiffs have not even argued that they have standing to assert the ESA claim. Okay. We have the arguments in the briefs. We don't need, you know, the laundry. Then, finally, the plaintiffs did mention a case called California v. Department of Agriculture, and they argued that that establishes their rightness to challenge the BLM regulations. We actually mentioned that decision in our reply brief, but I should just briefly add that the Forest Service, in that case, took the position that it was not required to prepare an EIS at all. Counsel, we have the cases. We're familiar with it. Then that's all I have. We appreciate it. Thank you. All right. Thank you very much, counsel. It's an interesting case. We appreciate the arguments and the cases submitted. All right. The last case on today's calendar is Lobos v. U.S. Forest Service.
judges: Moskowitz, Fisher, Paez